IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:18-CV-44-RJ

| | |
|---|---|
| RICHARD MICHAUX VANDERPOOL, JR., <br><br> Plaintiff/Claimant, <br><br> v. <br><br> NANCY A. BERRYHILL, <br> Acting Commissioner of Social Security, <br><br> Defendant. | ORDER |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-16, -24] pursuant to Fed. R. Civ. P. 12(c). Claimant Richard Michaux Vanderpool, Jr. ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and the case is remanded to the Commissioner for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability, DIB, and SSI on April 7, 2014, alleging disability beginning July 31, 2013. (R. 23, 213–21). His claims were denied initially and upon reconsideration. (R. 23, 77–128). A hearing before the Administrative Law

Judge ("ALJ") was held on January 4, 2017, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 23, 41–73). On February 3, 2017, the ALJ issued a decision denying Claimant's request for benefits. (R. 20–40). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 211–12), and he submitted additional evidence as part of his request (R. 5). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on December 7, 2017. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R.

2

§ 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

3

In this case, Claimant alleges the following errors: (1) substantial evidence does not support the ALJ's finding that Claimant has the RFC to perform light work, and (2) the ALJ improperly relied upon the VE's testimony. Pl.'s Mem. [DE-17] at 8–15.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since July 31, 2013, the alleged onset date. (R. 25). Next, the ALJ determined Claimant had the following severe impairments: disorders of muscle, ligament, and fascia; spine disorder; and learning disorder. *Id.* The ALJ also found Claimant had non-severe impairments of hypertension and gastroesophageal reflux disease (GERD). (R. 26). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in a mild limitation in understanding, remembering, or applying information; no limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. (R. 27–28).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] requiring the following limitations:

[T]he claimant can operate foot controls with his right foot occasionally. The

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

claimant can never climb ladders, ropes, or scaffolds, and never kneel, crouch, or crawl. He can occasionally climb ramps or stairs. He can occasionally balance with a hand held assistive device and stoop. The claimant can frequently perform bilateral gross and fine manipulation. He is limited to jobs that can be performed while using a hand held assistive device at all times when standing. The claimant must avoid all exposure to hazardous machinery and unprotected heights. Work is limited to simple and routine tasks in a low stress work environment, which is define [sic] as having no fixed production quotas, with no hazardous conditions and only occasional decision-making and occasional changes in the work setting. He is able to perform the job, either sitting or standing, as desired, such as in benchwork occupations.

(R. 28–33). In making this assessment, the ALJ found Claimant's statements about the intensity, persistence, and limiting effects of his symptoms not fully consistent with the objective medical and other evidence. (R. 30).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a construction laborer, general laborer, or production worker. (R. 33). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 34–35).

## V. DISCUSSION

**A.     Substantial evidence supports the ALJ's assessment of Claimant's RFC.**

Claimant contends that the ALJ erred in finding that he has the RFC to perform light work. Pl.'s Mem. [DE-17] at 8–12. The court disagrees.

An individual's RFC is the capacity he possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio*

5

*v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5.

When a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Brown*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed along with a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence," as well as a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*; *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

Claimant contends that because no medical opinion supports an RFC of light work, there is not substantial evidence to support the RFC. Pl.'s Mem. [DE-17] at 8–10. However, the law does not require the RFC to mirror a medical opinion; rather, the ALJ must consider the record as a whole, including "medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Baldwin*, 444 F. Supp. 2d at 465.

Here, there was substantial evidence to support the RFC, despite the lack of a medical opinion expressly stating that Claimant can perform light work. The ALJ analyzed Claimant's back pain, right thigh injury, and mental impairments, and he concluded that Claimant can perform light work with the limitations noted above.

### 1. Claimant's physical limitations

Claimant has a history of back pain that began with a workplace accident more than fifteen years ago and was aggravated in a motor vehicle accident seven years ago. (R. 29). First, the ALJ summarized Claimant's consultative examination with Dr. Alan Cohen on January 9, 2014. *Id.* Claimant "reported joint pain, stiffness, and back pain," but Dr. Cohen found "no muscle tenderness, atrophy, or fasciculations." *Id.* Claimant "could sit, stand, squat, and ambulate." *Id.* He "had steady gait, stiff-back station, and normal muscle strength. The claimant's spine was normal without deformity or tenderness." *Id.* Claimant had "a positive bilateral straight leg raise," and "[i]n terms of diagnostic evidence, X-rays of the claimant's lumbar spine indicated minor degenerative spurs." (R. 29–30). Dr. Cohen did not opine on Claimant's ability to perform light work, but he did opine that Claimant did not need an assistive device for ambulation, he could "walk a block at a reasonable pace," and his "ability to sit, stand, handle objects, hear and speak is not impaired," although his "ability to lift, carry and stamina is moderately impaired." (R. 31).

The ALJ gave Dr. Cohen's opinion only partial weight because Dr. Cohen's "limitations appear to be less restrictive than those supported by the overall medical evidence." *Id.* The ALJ repeated a short summary of Dr. Cohen's examination of Claimant as well as Dr. Gefland's later examination, which is discussed below. *Id.* The ALJ formulated an RFC in which Claimant is "limited to jobs that can be performed while using a hand held assistive device at all times when standing." (R. 28). The ALJ thereby imposed *greater* restrictions than those Dr. Cohen opined

7

were necessary.

Next, the ALJ summarized Claimant's consultative examination with Dr. Stephen Gelfand on December 30, 2014:

> During examination, the claimant had muscle tenderness. The claimant could sit, stand, and ambulate slowly with a cane. He was unable to rise on his right toes, walk on his heels, or do tandem or squat due to right thigh and lower back pain. He had limited range of motion of the right hip and right knee, as well as decreased range of motion of the lumbar spine with pain and diffuse tenderness. In addition, there was right lateral thigh tenderness and numbness.

(R. 30). Dr. Gelfand opined:

> The claimant is unable to walk a block at a reasonable pace on a rough/uneven surface. The claimant is unable to climb a few steps at a reasonable pace with the use of a single handrail. The claimant does have full use of the other upper extremity for carrying objects. The claimant's ability to sit, handle objects and speak is not impaired. The claimant's ability to stand, hear and stamina is mildly impaired. The claimant's ability to move about, lift, carry, and travel is moderately impaired.

(R. 32). The ALJ gave Dr. Gelfand's opinion partial weight because the "limitations are vague" and Dr. Gelfand "failed to provide a function-by-function assessment of the claimant's ability to perform basic work activities." (R. 32).

The ALJ then summarized Claimant's right thigh pain as follows:

> [T]he claimant suffered a right thigh injury in February 2014 and complained of increasing pain, swelling, and difficulty in ambulating. He was diagnosed with right thigh compartment syndrome and underwent a right thigh fasciotomy and wound VAC placement in February 2014. The procedure indicated obvious compartment syndrome of the right thigh with a large hematoma of the vastus lateralis. The abductor muscles were soft after releasing the anterior and posterior compartments (Exhibit 2F/20). The claimant continued to complain of right thigh pain throughout the record. He described his right thigh pain as burning, aching, and sharp. He reported decreased mobility, difficulty going to sleep, night pain, nighttime awakening, and weakness.

(R. 30). However, the ALJ found Claimant's statements about the intensity, persistence, and limiting effects of his symptoms not entirely consistent with the evidence. *Id.* The ALJ explained:

> [T]he claimant's treatment records are inconsistent with the alleged severity of his impairments. Despite the claimant's allegations of severe impairments that prevent him from performing basic work activities, January 2015 physician notes provide that the claimant was doing well and future surgery for the claimant's right thigh compartment fasciotomy was not recommended. Notes also indicated that the claimant had not been compliant with home exercises, and was not participating in rehabilitation (Exhibit 4F/5, 10, 23). Further, during examination in March 2016, the claimant did not report gait disturbance, joint swelling, or muscle weakness (Exhibit 8F/3). These findings also suggest that the claimant is not limited to the extent alleged.

(R. 31).

Although there is no opinion expressly stating that Claimant can perform light work with the limitations imposed by the ALJ, the ALJ appropriately considered the opinions of Dr. Cohen and Dr. Gelfand; the objective medical evidence, such as Claimant's X-ray; and the treating providers' observations. *See Baldwin*, 444 F. Supp. 2d at 465. He also considered Claimant's statements to his treating providers and Claimant's testimony at the hearing. The ALJ concluded that greater limitations were needed for Claimant's back pain than those described by Dr. Cohen and Dr. Gelfand; for instance, the ALJ limited Claimant to light work "that can be performed while using a hand held assistive device at all times when standing." (R. 28). Additionally, the ALJ included limitations for operating foot controls, climbing, kneeling, crouching, crawling, balancing, and stooping. *Id.* He restricted Claimant to work that allows him to alternate between sitting and standing. *Id.* No medical opinion is identical to the restrictions the ALJ imposed in the RFC for Claimant's physical limitations, but nevertheless, there is substantial evidence supporting the ALJ's RFC determination. The ALJ provided a "narrative discussion describing how the evidence supports each conclusion," *Baldwin*, 444 F. Supp. 2d at 465, and there is "an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. Accordingly, the ALJ did not err in assessing Claimant's physical limitations.

## 2. Claimant's mental impairments

The ALJ noted that Claimant's "IQ level was in the borderline range" at 72 in 1992, and it was "78 in 1987, 64 in 1986, and 80 in 1989." (R. 30). Claimant was in special education classes, but "there is no indication from the record that the claimant has ever received treatment for his learning disorder. During the claimant's consultative examination, he had intact recent and remote memory, with normal judgment, insight, affect, and mood." *Id.* Dr. Arne Newman evaluated Claimant's medical records at the reconsideration level and found that "the record does support the claimant's allegations of mild learning disorder, but with past work, it does not seem to cause a concern with getting a job. Dr. Newman also determined that the claimant's mental impairment was non-severe." (R. 33). Additionally, Claimant testified that he struggles with counting change and reading. *Id.* He said that he cannot write a check, read the correspondence he received regarding his case, or do sufficient math to run a cash register. (R. 64). He quit school before the eighth grade because he "couldn't read or write and do math and nothing." (R. 65).

The ALJ found that Claimant had a mild limitation in understanding, remembering, or applying information because although he was in special education classes, cannot count change, and has difficulty reading and writing, "he had intact recent and remote memory, with normal judgment, insight, affect, and mood" at his consultative examination. (R. 27). He has no limitation interacting with others; he is married with children, he has a good work history, and he did not report any difficulty getting along with others. *Id.* The ALJ also found that Claimant has a moderate difficulty concentrating, persisting, or maintaining pace because he is unable to write a check, use an ATM card, or count change, but he "was able to follow and answer questions appropriately at the hearing." (R. 28). He also has a mild limitation in adapting or managing himself because he can "cook simple meals, perform housework such as laundry, and go shopping

10

in stores with his wife." *Id.*

There is substantial evidence for the ALJ's assessment of Claimant's ability to understand, remember, and apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage himself. The ALJ cited Claimant's testimony as well as his consultative examinations, and the ALJ built a logical bridge from that evidence to his conclusions.

To account for those mental limitations in the RFC, the ALJ imposed the following restrictions: Claimant is "limited to simple and routine tasks in a low stress work environment, which is define [sic] as having no fixed production quotas, with no hazardous conditions and only occasional decision-making and occasional changes in the work setting." (R. 28–29). The limitation to simple and routine tasks would be insufficient on its own to account for Claimant's moderate limitation in concentration, persistence, or ability to maintain pace. *Mascio*, 780 F.3d at 638. However, the other RFC restrictions—in particular, the restriction against production quotas—are sufficient to account for Claimant's mental limitations. *See, e.g.*, *Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017) (holding that limitations working in a low stress, non-production job with no public contact were sufficient to account for moderate limitation in concentration, persistence, or pace); *Bowen v. Berryhill*, No. 5:16-CV-65-FL, 2017 WL 1194462, at *3 (E.D.N.C. Mar. 31, 2017) (holding that an RFC of simple, routine, repetitive tasks, no production work and only occasional interaction with other people was sufficient to account for moderate limitation in concentration, persistence, or pace); *Lee v. Colvin*, No. 5:15-CV-142-D, 2016 WL 816784, at *1– 2 (E.D.N.C. Mar. 15, 2016) (finding that an RFC including a limitation against *"fast paced or quota based* work" comports with *Mascio*) (emphasis added); *Ford v. Colvin*, No. 4:14-CV-79-D, 2015 WL 5008962, at *3 (E.D.N.C. Aug. 19, 2015) (finding that RFC limitations to a *"low production* occupation" accounted for the claimant's pace, "no constant change" accounted for

11

persistence, and "no loud noises" accounted for concentration) (emphasis added). There is substantial evidence to support the ALJ's assessment of Claimant's mental limitations, and those limitations are sufficiently accounted for in the RFC.

### B. The ALJ erred in formulating the hypothetical question to the VE and in determining that Claimant can adjust to other work.

Claimant contends that the ALJ erred in formulating the hypothetical question to the VE because the question did not include limitations for Claimant's difficulty reading, writing, or doing arithmetic. Pl.'s Mem. [DE-17] at 13–15. Claimant also contends that the ALJ erred in relying upon the VE's testimony because it was elicited in response to an incomplete hypothetical. *Id.* The court agrees that the hypothetical question was too imprecise, as it did not include any facts about Claimant's education level. Additionally, the ALJ erred in relying upon the VE's testimony because it was not supported by substantial evidence, and the ALJ offered no other reasons for his conclusion that Claimant can adjust to other work.

#### 1. The ALJ asked the VE an inadequate hypothetical question.

If a disability determination cannot be made at the first four steps of the sequential evaluation process, the ALJ will consider the RFC together with the claimant's vocational factors to determine whether the claimant can adjust to other work. 20 C.F.R. §§ 404.1560(c), 416.960(c). The vocational factors include the claimant's age, education, and work experience. *Id.* Education is a claimant's "formal schooling or other training which contributes to [his] ability to meet vocational requirements." *Id.* §§ 404.1564(a), 416.964(a). In evaluating a claimant's educational level as a vocational factor separate and apart from a claimant's grade level, an ALJ may determine that a claimant is illiterate, has a marginal education, has a limited education, or has a high school

12

education and above.[2] *Id.* §§ 404.1564(b), 416.964(b). A claimant's educational level may disqualify him from performing certain jobs, for the DOT specifies the required ability to read, write, and perform arithmetic for each occupation. *See, e.g.*, DICOT 920.687-126 (G.P.O.), 1991 WL 687992.

In determining whether a person with the claimant's RFC, age, education, and work experience can adjust to other jobs in the national economy, the ALJ may consider the testimony of a VE. The purpose of a VE is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *see also* 20 C.F.R. §§ 404.1566(e), 416.966(e). In order for a VE's opinion to be relevant or helpful, "it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker*, 889 F.2d at 50. "An ALJ's description of his findings in his hypothetical and in his written decision must be particularly precise." *Vail v. Barnhart*, 84 F. App'x 1, 5 (10th Cir. 2003). The hypothetical is inadequate when it omits "key facts that must inform the agency's conclusion." *Id.* If the hypothetical question does not "ensure[] that the VE knew what Claimant's abilities and limitations were," then "the VE's responses to those questions cannot constitute sufficient evidence to support a finding that Claimant was capable of substantial gainful activity." *Riley v. Chater*, 57 F.3d 1067, 1067 (4th Cir. 1995).

Here, the ALJ said, "Assume a hypothetical individual of claimant's age, *education* with the past jobs [sic]," and with the Claimant's RFC. (R. 70–71) (emphasis added). In framing the

---

[2] "Illiteracy means the inability to read or write." 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1). A person is illiterate if he "cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." *Id.* A marginal education consists of "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs." *Id.* §§ 404.1564(b)(2), 416.964(b)(2). Generally, "formal schooling at a 6th grade level or less is a marginal education." *Id.* A limited education consists of some "ability in reasoning, arithmetic, and language skills, but not enough to do most of the more complex job duties needed in semi-skilled or skilled jobs." *Id.* §§ 404.1564(b)(3), 416.964(b)(3). Generally, "a 7th grade through the 11th grade level of formal education is a limited education." *Id.*

13

hypothetical the ALJ failed to include Claimant's limitations on reading, writing, and performing arithmetic, including counting change, despite having completed the seventh grade. These impairments impact Claimant's educational level, as Claimant's completion of the seventh grade indicates that he has a limited education, but his limited ability to read, write, and perform arithmetic indicate that he has a marginal or even illiterate education. *See* 20 C.F.R. § 404.1564(b). Because there was conflicting evidence regarding Claimant's education and the ALJ did not specify an educational level in the hypothetical question, it is impossible to determine how the VE assessed Claimant's education. *Compare Walker v. Bowen*, 889 F.2d 47, 51 (4th Cir. 1989) (finding error when "the ALJ did not ask questions that ensured that the vocational expert knew what the claimant's abilities and limitations were"), *with Cline v. Chater*, 82 F.3d 409, 409 (4th Cir. 1996) (finding no error when conflicting evidence was presented regarding the claimant's education but the ALJ specified in the hypothetical question that the claimant had a "third grade education" and "limited ability to read and write."). It is unclear whether the VE knew the facts surrounding Claimant's education, therefore the ALJ erred in formulating the hypothetical question, and the VE's testimony cannot constitute substantial evidence that Claimant can adjust to other work. *See Riley*, 57 F.3d at 1067.

### 2. The ALJ erred in relying upon the VE's testimony because it is not supported by substantial evidence.

Even if the ALJ asked a proper hypothetical question that ensured the VE understood Claimant's educational level, the VE's testimony is not supported by substantial evidence, and it is therefore improper for the ALJ to rely upon it. After describing a hypothetical individual with Claimant's "age, education with the past jobs [sic]," and with the Claimant's RFC, the ALJ asked the VE, "Can this hypothetical individual perform any work? And if so, could you provide some

14

examples?" (R. 70–71). The VE responded that the hypothetical individual could perform work, and he offered the jobs of tag inserter, labeler, and collator as examples. (R. 71–72). Claimant argues that he cannot perform those jobs because they have "reading and math requirements that appear to be above [his] capacity." Pl.'s Mem. [DE-17] at 14.

Of the jobs mentioned by the VE, the one that requires the least ability to read, write, and perform arithmetic is a labeler, also called a "Marker II."[3] DICOT 920.687-126 (G.P.O.), 1991 WL 687992. That job requires Math Level 1, which requires a person to "add and subtract two-digit numbers. Multiply and divide 10's and 100's by 2, 3, 4, 5. Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint, and quart; inch, foot and yard; and ounce and pound." *Id.* It also requires Reading Level 1, which requires a person to "recognize meaning of 2,500 (two- or three-syllable) words. Read at a rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers." *Id.*

There is not substantial evidence that Claimant has the education to work as a labeler. The job would require Claimant to perform addition, subtraction, multiplication, and division with coins, but he testified that he cannot count change or do sufficient math to run a cash register. (R. 65). It would also require him to read 2,500 two or three syllable words and read at a rate of 95–120 words per minute, but Dr. Gelfand indicated that Claimant was "unable to read and write." (R. 360). Claimant testified that he "can't write a check or nothing." (R. 60). He was not able to read the correspondence he received regarding his case. (R. 64). His wife reads his mail, and when he

---

[3] A Marker II, or labeler, requires Level 1 math and Level 1 reading. DICOT 920.687-126 (G.P.O.), 1991 WL 687992. A collator requires Level 2 math and Level 1 reading. DICOT 653.687-010 (G.P.O.), 1991 WL 685810. A tag inserter requires Level 2 math and Level 2 reading. DICOT 222.567-018 (G.P.O.), 1991 WL 672114. Because the job of labeler requires the least education, if Claimant lacks the education to work as a labeler, then he also lacks the education to work as a collator or tag inserter.

15

got a driver's license, an employee of the DMV read the test questions to him. *Id.* He can only read "little, easy words." (R. 64). He wanted to get his GED, but he "couldn't read the paper to do it." *Id.* He quit school before the eighth grade because he "couldn't read or write and do math and nothing." *Id.* The ALJ's finding that Claimant can work as a labeler is not supported by substantial evidence, and because the other jobs offered by the VE require even greater ability to read, write, and do arithmetic, there is not substantial evidence that Claimant can perform those jobs, either. *See Crawford v. Comm'r of Soc. Sec.*, No. 1:13-CV-1230-STA-tmp, 2016 WL 3579230, at *5 (W.D. Tenn. June 28, 2016) (finding that the ALJ's step five determination was not supported by substantial evidence when there were "too many inconsistencies between the record concerning Plaintiff's abilities and impairments, in particular her reasoning, reading, math, and speech levels, and the requirements for the jobs named by the vocational expert").

Defendant argues that any mischaracterization of Claimant's education level is harmless error. Def.'s Mem. [DE-25] at 11. The ALJ found that Claimant has a limited education and can adjust to other work. (R. 34). However, there is conflicting evidence that Claimant has a limited education. The fact that Claimant completed the seventh grade indicates that he has a limited education, but "the numerical grade level that [a claimant] completed in school may not represent [his] actual educational abilities." 20 C.F.R. §§ 404.1564(b), 416.964(b); *Shoulars v. Astrue*, 671 F. Supp. 2d 801, 807 (E.D.N.C. 2009) ("the ALJ erred in relying only on plaintiff's sixth-grade education to determine his educational abilities"). A claimant's grade level is only used to determine a claimant's educational abilities "if there is no other evidence to contradict it." *Id.* Here, there is evidence that Claimant cannot read, write, or do math at a seventh grade level, as he is unable to perform basic arithmetic or read more than "little, easy words." (R. 60–65). Where there is conflicting evidence as to Claimant's education level, the ALJ must explain his findings.

16

*See Shoulars*, 671 F. Supp. 2d at 807 (finding that there was conflicting evidence as to the claimant's educational level and the ALJ's "findings regarding plaintiff's education level and illiteracy are sparse," so the "ALJ's findings are not supported by substantial evidence."). The error is not harmless because, as described above, the ALJ found that Claimant meets the requirements to work as a labeler, and if he cannot perform Level 1 reading and math, the ALJ's finding was incorrect.

The VE's response to the hypothetical question must account for Claimant's vocational factors, including his education. Here, there is not substantial evidence to support the VE's testimony because there is insufficient evidence that Claimant has the education to perform the jobs offered by the VE. *See Crawford*, 2016 WL 3579230, at *5. The ALJ therefore erred in relying upon the VE's testimony, and the ALJ offered no other reasons to find that Claimant can adjust to other work. At step five of the sequential evaluation process, it is the ALJ's burden to prove that Claimant can adjust to another job. *Pass*, 65 F.3d at 1203; 20 C.F.R. §§ 404.1560, 416.960(c) ("We are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors."). The ALJ did not meet that burden. Accordingly, remand is appropriate for the ALJ to adequately explain why Claimant can adjust to other work at step five of the sequential evaluation process.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-16] is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-24] is DENIED, and this matter is REMANDED to the Commissioner for further proceedings consistent with this Order.

So ordered, this the 7 day of January, 2019.

Robert B. Jones, Jr.
United States Magistrate Judge